AMTAX Holdings 227, LLC v. CohnReznick LLP Good morning, Your Honors. Reed Skybelv Glenn Agri Bergman Fuentes for the Appellant, AMTAX. Now, well, ostensibly this... Can I ask you just to raise your podium just a little bit? I just want to make sure that you're going to be heard clearly by everyone. Perfect. Thank you. And Judge Calabresi, can you hear me okay? I hear you fine. Excellent. Thank you. So, while ostensibly this appeal is a grable gun appeal and prepared to talk about the four prongs of the test, what it really boils down to is a more fundamental issue, which is who is the master of the complaint? Our position is that it should be the plaintiff. And we would point to the law, and our papers do, in the Sharkey decision, which specifically indicates that 12b1 context, the district court, when there's been no evidentiary hearing, is required, and I'm quoting now, to accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. Now, that did not happen here. There's no dispute that the allegations in the complaint, as pled, all state causes of action that are based on the interpretation of section 42, little i, 7 of federal tax code. Each one, that runs through the entire complaint. And appellee does not argue to the contrary in their papers. Counsel, counsel, here is my problem. If you put things the way you do, then any party in practice can create federal jurisdiction by putting in their claims something that depends on the federal statute. And then, at that level, as you say, federal jurisdiction would exist. Now, doesn't that run directly against the fourth part of a gun test, which is that this doesn't disrupt federal state relations too much? Judge Calabresi, I would say it clearly does not. And I want to take it two different ways. One, and I'll start briefly, there are many limits on what can be pled in a complaint, both in terms of good faith, 12b6 requirements, there's all sorts of things. And here, the causes of action, because remember, the appellee does not argue to the contrary, all do raise out of tax related issues. And the second thing I want to note on this is the issue of the federal state balance. What we're talking about here is a tax provision that makes this very close to the Jacobson case. This is a provision that investors are relying on to front money for low income tax partnerships, and then we'll get that money back for at least 15 years in the future. So if there are different interpretations of what that section of the tax code requires, that is going to cause people to, the cost of capital goes up. Just like in the Jacobson case, the concern was that the mortgage costs would go up. Well, what about the other half of that federal state balance? I mean, the district court said that recognizing federal jurisdiction to exist in this case would raise the specter of countless accountants' claims so long as there is a federal tax provision at issue. Why was she incorrect about that? Two reasons. The first, which is clearly, is that she misinterprets what the complaint is about. The complaint is a pure issue of law related to that section of the tax code. But more importantly, this is a very narrow area of the law. And that's what Justice Deary points out in the Riseboro case. The cases that Appellee has cited and the district court cited relate to settled issues of tax law, where the issue is whether someone made a mistake. Here we're talking about an unsettled area of tax law, where the issue is the various different interpretations and what impact that could have. The area of tax law is uncertain. One question that I have is, suppose we decide one way or the other, does that bound the opposing party in a tax case that involves that party completely separate as to tax liabilities and so on? Or would that still be argued as a separate matter? It would depend on all the elements of res judicata, whether they were met in that particular instance. I'm talking about this case. That is, if we interpret, if we had federal jurisdiction because of what you said, and then read the contract in a particular way because of the way we read that section of the tax code, does that bind the other party in this case or does it not? In a tax case later or not? It would bind the other party in this case, meaning Cohen-Resnick. It wouldn't bind non-parties, to my understanding. And that's part of the point, is that a decision by a federal court can help bring clarity so we don't have these types of cases. Judge Deary pointed out that there were multiple cases already going on, and that was back in 2019. Here we have even more since that's taken place. We have a case in Massachusetts. Because this case was dismissed, we now have a case in Colorado. Those types of situations are exactly why federal jurisdiction is necessary here to bring clarity to this area of the law, which is not something you have in most other types of cases and why the floodgates would not open. Relatedly, with respect to the issue of the floodgates opening, I would note that Cohen-Resnick itself holds itself out as a specialist in this area of the tax code. And that's exactly one of the main differences between that and the sort of parade of evils that are discussed. And we know with the Jacobson case, after that case, it wasn't like there was a wave of accountant cases or cases of tax code cases. And here the facts, like I noted, are very similar. A very specialized area of the law that has importance broadly because of what it can do to incentives. Counsel, we very often are in a position as federal courts that we have to interpret state law, but that doesn't bind the state actor with respect to that thing. Why isn't this simply the reverse? That the state court decides the contract issue and its reading of the federal law and that reading may be correct, may be not, but it binds the contract and federal law that takes care of itself when the issue comes up. Now, if they could certify, that would be a different thing, but you can't certify in reverse. So why isn't this simply a state case in which the state court interpreting the contract has to say what it thinks the federal law was? Because, and this is similar to Jacobson, we're talking about a federal program, low income housing tax credits, that's set with a particular structure that is based on certainty. And when you have state courts deciding this issue of federal law, you create potential uncertainty that would be, could harm that federal program. In fact, it would harm that federal program, just like in the Jacobson case is discussing. And that's also one of the things that Justice Deary talks about in the Risborough case, is the need for certainty in this area of the law. I'd make one last point on this issue. Separate and apart from the issue we're discussing with the federal state balance, look, we never got in the door to make these arguments because basically the complaint was taken away from us. There was no oral argument. There was no evidentiary hearing. That complaint could not be more specific that all the claims are based on interpretation of a certain provision of the tax code and based on misinterpretation of an email. And to be clear, it is a misinterpretation, and if there had been any sort of evidentiary finding or hearing, we would have explained that. But, and the district court disregarded the fact that appellee, incoming correspondents with us, admitted that the Roe for calculation they did was based on the tax code. We don't even get in the door, so we don't even get to argue really three or four of the grable gun test based on the actual allegations in the complaint. The district court did go through all of the four factors. Yes, the district court did, but the district court does it, and each time she says the difference here between the cases you cite and these circumstances is that your claims are based on interpretation of a contract. And that was not the case. We did not get a fair shot on the grable gun test, and that's sort of the core issue. Thank you. We'll hear from the other side. May it please the court. Melissa Pena from the law firm, Norris McLaughlin on behalf of the Pele. Judge Calabrese. Can you hear me? Yes, indeed. Thank you, Your Honor. The district court properly found that Amtex failed to establish, by a preponderance of the evidence, their burden to find that their state law claims should fall within the small category of cases where a court should exercise federal jurisdiction. The district court properly found that no federal question was raised because the calculation for the ROFR price is set forth in the right of first refusal agreement. While Amtex complains that it was not permitted to be the master of its complaint, there was no clear error by the district court. The district court relied upon an email attached to Amtex's complaint, which set forth the ROFR calculation as indicated in the ROFR agreement. The district court relied on the specific ROFR contract that set forth the calculation that Cohn-Resnick was to propose. But, counsel, why shouldn't federal courts be the ones to interpret federal law? I mean, a state court could read what it means in the contract, but then you'd have a reading of federal law which might be wrong. Why shouldn't, except if it is really troublesome, as the Supreme Court suggested in Gunn and the third thing, the last point, be federal courts to say what federal law is? Why isn't that a better arrangement, much of a doubt? I mean, this is a close case between Gramble, Gunn, and the other cases, but why shouldn't we be more sympathetic? Well, Your Honor, I respectfully submit that this isn't a question of federal law. I acknowledge that the language in the ROFR contract mirrors the language of section 42 of the code, but Amtex could come into this court and argue that my client improperly conducted the ROFR calculation based solely on the contract without looking to section 42I of the code. Further, Your Honor, we'd submit, because the language mirrors the code, is not the end of the inquiry. The court would have to analyze what was the intent of these specific parties in putting that calculation in the contract. For example, Your Honor, if prior drafts of the contract included the term exit taxes be included, that would have bearing on Your Honor's analysis, and Your Honor would be looking beyond section 42 of the code. It all goes to the fact, Your Honor, that there's no substantiality here. There's not a pure question of law, as in Rysborough. It's a fact-sensitive inquiry, because as the lower court found, right-of-first refusal agreements are sui generis. But isn't the provision really at the heart? I mean, the claim is that the accountants committed professional negligence, breach of fiduciary duty, because they interpreted language that is word-for-word the federal statute's language. And looking at the overall program, it's pretty clear that was the intention, just looking at the four corners of the contract. So isn't federal law at the heart of this? Your Honor, we would submit that the federal question is raised, the federal question is there, but it can't be interpreted solely based on federal law. For example, as this court is aware, the underlying dispute between Amtex and the exerciser of the right-of-first refusal is pending in Massachusetts court. When the Massachusetts court analyzed how the calculation should be performed, the Massachusetts court did look to federal law, and it did see if there was any statutory interpretation. But the issue is whether exit taxes are included in the calculation. The calculation says it includes taxes attributable to the sale of the property. The Massachusetts court went to the party's partnership agreement and relied on the fact that the partnership agreement states that following a sale of the property, there should be a prompt dissolution of the partnership. While we disagree with the Massachusetts court's analysis, and that's up on appeal, it's indicative of the fact that the Massachusetts court could not determine whether this was calculated properly based looking solely on federal law. It had to look to the intent of the parties. That's why this is not a pure question of law. It's a question of fact. Substantiality cannot be established. That's why it's distinguishable from the Jacobson case that my colleague relies upon. In Jacobson, the issue was whether they were compliant. There was an allegation that the defendant was not complying with federal law. There's no allegation here that Cohn-Resnick did not comply with federal law. As noted by the First Circuit, who decided- Wasn't there an email to that effect? Not in the contract itself, but wasn't there an email that made specific reference to the federal law? Yes, Your Honor. There was a letter from my client indicating that the calculation was performed consistent with the Internal Revenue Code. We have to acknowledge, Your Honor, that the language does track the Internal Revenue Code. But counsel says that the district court erred because they didn't have an evidentiary hearing. There's no disputed fact to have an evidentiary hearing upon. It's undisputed that the right of first refusal arises under the contract. It's undisputed that the calculation is set forth in the contract. And we concede that the language in the contract mirrors Section 42AI of the code. But there's still no substantiality. And there's still a risk of disrupting the balance between federal and state courts. And the reason there's no substantiality is there's no federal activity implicated here. They have not, nor can they, allege that their tax credits are at risk. Now, they will tell you, and they have, that this is going to create uncertainty in the LIHTC industry. Investors such as Amtex will not know whether or not they will get their exit taxes and be reluctant to invest. That's not true. Because these are creatures of contract. When the next investor wants to invest, if they're uncertain their exit taxes will be included in the calculation, they will negotiate that the exit taxes be included in the calculation. Which is precisely what Amtex could have done here and did not do, which is what's creating this ambiguity. So there's no showing that it's going to destabilize the low-income housing tax credit industry. Particularly, as the district court noted, ROFR contracts are sui generis. There's also been no showing that exit taxes are an issue addressing this industry. As set forth by the district court, they relied on a HUD report, which was referenced in Amtex complaint. And that very HUD report said that exit taxes are not an issue after the 15-year compliance period. They're upset that they are relying on the papers that they set forth in their complaint and contending that the district court is not allowing them to be the master of their complaint. That does not commit clear error. The district court relied on the documents referenced in their complaint. Further, as this court is aware, the district court is allowed to consider extrinsic evidence. There's various parts in the record which establish that this calculation comes from the ROFR agreement. The Massachusetts court found that it arises under the ROFR agreement. Further, the very engagement letter with Cohn-Resnick establishes that Cohn-Resnick is to review the ROFR agreement and conduct the calculation. Lastly, I'll just add that there's a balance here. And we submit that it's going to disrupt the balance if you let state law malpractice claims come into this court. Because anytime you have a state law malpractice claim, whether it be a legal malpractice claim, an accountant malpractice claim, that requires this court to interpret a federal statute, they can say that the jurisdiction is present. And that's not appropriate here as recognized by the district court. Thank you. We'll hear rebuttal. Thank you. I'll be very brief. I'm just going to deal with the substantiality issue. Now, two very quick things that my colleague noted that I wanted to address. One is the complaint does allege that the tax status of the partnership might be implicated by a finding that the partnership didn't comply with the tax. It's paragraph three. And the other thing I wanted to briefly address was this HUD report that the district court relied upon. The HUD report that it's talking about is from 2012. And it's talking about the first wave of sort of these types of low-income tax credit partnerships coming to 15 years. The Reisberg case is 2019. And it notes how many different across-the-country problems are coming up in cases about this issue. And then we have 2024. And this very case shows that this is continuing to come up as an issue and an issue. So this is the type of thing that if there had been a hearing or further engagement, we would have noted. But we think this is clearly a very, very similar case to Jacobson, particularly like the incentives just make sense, right? There's uncertainty. Uncertainty is going to increase the cost of capital. That's bad for the low-income tax program. We should have the federal decisions and create certainty. That's basically it. Thank you. Thank you both. And we'll take the matter under advisement. Nicely argued.